1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL TORRES,                    )    1:10-cv-00773-OWW-JLT HC
                                       )
12              Petitioner,            )    FINDINGS AND RECOMMENDATION RE:
                                       )    RESPONDENT'S MOTION TO DISMISS
13        v.                           )    THE PETITION (Doc. 1)
                                       )
14                                     )    ORDER DIRECTING OBJECTIONS TO BE
     JAMES HARTLEY,                    )    FILED WITHIN TWENTY DAYS
15                                     )
                Respondent.            )
16   _____)

17
                            **PROCEDURAL HISTORY**
18

19        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

20   pursuant to 28 U.S.C. § 2254.   The instant federal petition for writ of habeas corpus was filed on

21   April 6, 2010.[1]   The petition alleges that the "retroactive" change in California law effected by the

22

     _____

23        [1]In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is
     deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court
24   clerk.  Houston v. Lack, 487 U.S. 166, 276, 108 S.Ct. 2379, 2385 (1988).  The rule is premised on the pro se prisoner's
     mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be
25   adverse to his." Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see, Houston, 487 U.S. at 271, 108 S.Ct. at 2382.  The
     Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the
26   AEDPA.  Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000), *amended* May 23, 2001, *vacated and remanded on
     other grounds sub nom*. Carey v. Saffold, 536 U.S. 214, 226 (2002); Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th cir.
27   2003); Smith v. Ratelle, 323 F.3d 813, 816 n. 2 (9th Cir. 2003). The date the petition is signed may be considered the earliest
     possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule.  Jenkins v. Johnson,
28   330 F.3d 1146, 1149 n. 2 (9th Cir. 2003), *overruled on other grounds*, Pace v. DiGuglielmo, 544 U.S. 408, 125 S.Ct. 1807
     (2005).  Accordingly, for all of Petitioner's state petitions and for the instant federal petition, the Court will consider the date
     of signing of the petition (or the date of signing of the proof of service if no signature appears on the petition) as the earliest

                                        1

1  passage of Proposition 9 in November 2008 as "California Penal [Code] Section 3041(a)(2)(3)"

2  exposes Petitioner "to a sufficient risk of prolonged incarceration and a more severe punishment...in

3  violation of due notice [sic] of law, and the ex post facto clause." (Doc. 1, p. 6).  Petitioner also

4  alleges that the new law "was causing or would cause Petitioner to be in illegal physical confinement

5  and when depriving Petitioner good-time, work-time, pre and post confinement credits, in violatioin

6  of due notice [sic], the Sixth Amendment, and ex post facto, protected by the due process claus of

7  the Fourteenth Amendment to the United States Constitution."  (Id.).

8        On June 11, 2010, the Court ordered Respondent to file a response to the petition.  (Doc. 7).

9  On August 10, 2010, Respondent filed the instant motion to dismiss, contending that the petition was

10  untimely and that it failed to state a claim upon which habeas relief could be granted.  (Doc. 10).

11  Petitioner filed his opposition to the motion to dismiss on August 18, 2010.  (Doc. 11).

12                                        **DISCUSSION**

13        A.  Procedural Grounds for Motion to Dismiss

14        As mentioned, Respondent has filed a Motion to Dismiss the petition as being filed outside

15  the one year limitations period prescribed by Title 28 U.S.C. § 2244(d)(1).  Rule 4 of the Rules

16  Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from

17  the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the

18  district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

19        The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer

20  if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the

21  state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule

22  4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874

23

24  possible filing date and the operative date of filing under the mailbox rule for calculating the running of the statute of limitation. Petitioner signed the instant petition on February 1, 2010. (Doc. 1, p. 5). Respondent contends that Petitioner

25  did not comply with Rule 3(d) of the Rules Governing Section 2254 Cases, requiring the attachment of either a certificate of mailing or a declaration or notarized statement indicating the date Petitioner provided his petition to prison authorities

26  along with a statement that the postage had been prepaid. (Doc. 10, p. 4). Respondent urges therefore that the Court find the appropriate filing date to be the actual filing date of August 10, 2010. (Id.). The Court, however, notes that along with

27  the original petition, Petitioner filed a motion to proceed in forma pauperis. (Doc. 2). That motion is signed and dated April 6, 2010. Since both documents were filed together, it seems obvious that the petition could not have been delivered to prison

28  authorities earlier than April 6, 2010. Accordingly, the Court will use that date as the filing date for purposes of the AEDPA's statute of limitations. See Jenkins, 330 F.3d at 1149 n. 2

2

1  F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for

2  state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).

3  Thus, a Respondent can file a Motion to Dismiss after the court orders a response, and the Court

4  should use Rule 4 standards to review the motion.  <u>See</u> <u>Hillery</u>, 533 F. Supp. at 1194 & n. 12.

5       In this case, Respondent's Motion to Dismiss is based on a violation of 28 U.S.C. §

6  2244(d)(1)'s one year limitation period and the failure to state a federal habeas claim.  Because

7  Respondent's Motion to Dismiss is similar in procedural standing to a Motion to Dismiss for failure

8  to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal

9  Answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule

10  4.

11       B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus

12       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

13  1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas

14  corpus filed after the date of its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063

15  (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586

16  (1997).  The instant petition was filed on April 6,  2010, and thus, it is subject to the provisions of

17  the AEDPA.

18       The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal

19  petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, § 2244, subdivision (d)

20  reads:

21       (1)  A 1-year period of limitation shall apply to an application for a writ of habeas
        corpus by a person in custody pursuant to the judgment of a State court.  The
22       limitation period shall run from the latest of –

23            (A) the date on which the judgment became final by the conclusion of direct
        review or the expiration of the time for seeking such review;
24
            (B) the date on which the impediment to filing an application created by
25       State action in violation of the Constitution or laws of the United States is removed, if
        the applicant was prevented from filing by such State action;
26
            (C) the date on which the constitutional right asserted was initially recognized by
27       the Supreme Court, if the right has been newly recognized by the Supreme Court and made
        retroactively applicable to cases on collateral review; or
28
            (D) the date on which the factual predicate of the claim or claims presented

3

1    could have been discovered through the exercise of due diligence.

2         (2) The time during which a properly filed application for State post-conviction or
      other collateral review with respect to the pertinent judgment or claim is pending shall
3      not be counted toward any period of limitation under this subsection.

4    28 U.S.C. § 2244(d).

5         In most cases, the limitation period begins running on the date that the petitioner's direct

6    review became final.  Here, Petitioner is challenging the legality of California's enactment of a law

7    affecting the timing of parole suitability hearings.  Thus, the AEDPA's one-year statute of

8    limitations, as embodied in § 2244(d)(1), would apply.  Under subsection (d), the limitation period

9    begins to run on "the date on which the factual predicate of the claim or claims presented could have

10   been discovered through the exercise of due diligence."  In the context of the enactment of a new

11   law, the Court agrees with Respondent that the factual basis would be the actual enactment of the

12   law.  In this instance, the challenged law, i.e., Proposition 9, was enacted on November 5, 2008.

13   Hence, the one-year period would commence the day after the law was enacted, i.e., November 6,

14   2008, and would have expired, absent applicable tolling, one year later, i.e., on November 5, 2009.

15        As mentioned, the instant petition was filed on April 6, 2010, approximately five months

16   after the date the one-year period would have expired.  Thus, unless Petitioner is entitled to either

17   statutory or equitable tolling, the instant petition is untimely and should be dismissed.

18        C.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

19        Under the AEDPA, the statute of limitations is tolled during the time that a  properly filed

20   application for state post-conviction or other collateral review is pending in state court.  28 U.S.C.

21   § 2244(d)(2).  A properly filed application is one that complies with the applicable laws and rules

22   governing filings, including the form of the application and time limitations.  Artuz v. Bennett, 531

23   U.S. 4, 8, 121 S. Ct. 361 (2000).  An application is pending during the time that 'a California

24   petitioner completes a full round of [state] collateral review," so long as there is no unreasonable

25   delay in the intervals between a lower court decision and the filing of a petition in a higher court.

26   Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), abrogated on other grounds as recognized

27   by Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008)(per curium)(internal quotation marks and citations

28   omitted); see Evans v. Chavis,  546 U.S. 189, 193-194, 126 S. Ct. 846 (2006); see Carey v. Saffold,

1  536 U.S. 214, 220, 222-226, 122 S. Ct. 2134 (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006

2  (9th Cir. 1999).

3       Nevertheless, there are circumstances and periods of time when no statutory tolling is

4  allowed.  For example, no statutory tolling is allowed for the period of time between finality of an

5  appeal and the filing of an application for post-conviction or other collateral review in state court,

6  because no state court application is "pending" during that time.  Nino, 183 F.3d at 1006-1007;

7  Raspberry v. Garcia, 448 F.3d 1150, 1153 n. 1 (9th Cir. 2006).  Similarly, no statutory tolling is

8  allowed for the period between finality of an appeal and the filing of a federal petition.  Id. at 1007.

9  In addition, the limitation period is not tolled during the time that a federal habeas petition is

10  pending.  Duncan v. Walker, 563 U.S. 167, 181-182, 121 S.Ct. 2120 (2001); see also, Fail v.

11  Hubbard, 315 F. 3d 1059, 1060 (9th Cir. 2001)(as amended on December 16, 2002).  Further, a

12  petitioner is not entitled to statutory tolling where the limitation period has already run prior to filing

13  a state habeas petition.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d)

14  does not permit the reinitiation of the limitations period that has ended before the state petition was

15  filed."); Jiminez v. White, 276 F. 3d 478, 482 (9th Cir. 2001).  Finally, a petitioner is not entitled to

16  continuous tolling when the petitioner's later petition raises unrelated claims.  See Gaston v. Palmer,

17  447 F.3d 1165, 1166 (9th Cir. 2006).

18       Here, Respondent concedes that Petitioner is entitled to statutory tolling for the pendency of

19  Petitioner's state court habeas petition filed in the California Supreme Court.  (Doc. 10, p. 4).  That

20  petition was filed on August 12, 2009 and denied on January 13, 2010.  (Doc. 10, Ex. 1).  Thus,

21  when Petitioner filed that state petition on August 12, 2009, 279 days had already expired of his 365-

22  day limitation period.  The one-year period re-commenced the day following the California Supreme

23  Court's denial of Petitioner's habeas petition, i.e., on January 14, 2010, at which time Petitioner had

24  only 86 days remaining in which to timely file his petition.  In other words, Petitioner had to file his

25  petition within 86 days, or by April 10, 2010, in order to meet AEDPA's timeliness requirement.

26  Since the Court has found that, for purposes of this motion to dismiss, Petitioner filed his petition on

27  April 6, 2010, four days before the one-year period expired, the petition is timely.  Accordingly, the

28  Court recommends that Respondent's motion to dismiss for untimeliness should be denied.

5

1          D.  Failure To State A Claim Upon Which Federal Habeas Relief Can Be Granted.

2          As mentioned, Petitioner contends that the passage of Proposition 9 in November 2008, and

3   enacted as "California Penal Code 3041(a)(2)(3)," exposes Petitioner "to a sufficient risk of

4   prolonged incarceration and a more severe punishment...in violation of due notice [sic] of law, and

5   the ex post facto clause." (Doc. 1, p. 6).  Petitioner also alleges that the new law "was causing or

6   would cause Petitioner to be in illegal physical confinement and when depriving Petitioner good-

7   time, work-time, pre and post confinement credits, in violation of due notice [sic], the Sixth

8   Amendment, and ex post facto, protected by the due process clause of the Fourteenth Amendment to

9   the United States Constitution."  (Id.).

10          Respondent contends that the petition should be dismissed for failure to state a cognizable

11   federal habeas claim because Petitioner has failed to "allege his current credit earning status, how

12   Proposition 9 prevents him from earning credits, how the passage of Proposition 9 unlawfully

13   aggravates the factors of his crime, or how the passage of Proposition 9 prolongs his term of

14   incarceration." (Doc. 10, p. 3).  Respondent argues that such deficient pleadings fail to "satisfy the

15   pleading requirements of Rule 2(c), and that, "[w]ithout knowing the facts that support Petitioner's

16   allegations or the specific grounds that support relief, Respondent is unable to respond to the

17   Petition." (Id.).  The Court agrees that the petition, as presently framed, fails to state a cognizable

18   claim for federal habeas relief.

19          The basic scope of habeas corpus is prescribed by statute. Subsection (c) of Section 2241 of

20   Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless

21   he is "in custody in violation of the Constitution."  28 U.S.C. § 2254(a) states that the federal courts

22   shall entertain a petition for writ of habeas corpus only on the ground that the petitioner "is in

23   custody in violation of the Constitution or laws or treaties of the United States.  See also, Rule 1 to

24   the Rules Governing Section 2254 Cases in the United States District Court.  The Supreme Court has

25   held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that

26   custody . . ." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  Furthermore, in order to succeed in a

27   petition pursuant to 28 U.S.C. § 2254, Petitioner must demonstrate that the adjudication of his claim

28   in state court resulted in a decision that was contrary to, or involved an unreasonable application of,

6

1   clearly established Federal law, as determined by the Supreme Court of the United States; or resulted

2   in a decision that was based on an unreasonable determination of the facts in light of the evidence

3   presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

4        Regarding pleading, Rule 2 of the Rules Governing Section 2254 Cases provides that the

5   petition:

6
7        " . . . shall specify all the grounds for relief which are available to the petitioner and of
         which he has or by the exercise of reasonable diligence should have knowledge and
         Shall set forth in summary form the facts supporting each of the grounds thus
8        specified."

9   Rule 2(c), 28 U.S.C. § 2254.   Thus, a petitioner must state his claim with sufficient specificity.  See

10  Hendricks v. Vasquez, 908 F.2d at 491-92; Wacht v. Cardwell, 604 F.2d 1245, 1246-47 (9th

11  Cir.1979).  Additionally, the Advisory Committee Note to these rules explains that:  " '(N)otice'

12  pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of

13  constitutional error.' " 28 U.S.C. § 2254, p. 1111; *Quoted approvingly in* Blackledge v. Allison, 431

14  U.S. 63, 75 n.7, 97 S.Ct. 1621 (1977).  Conclusory allegations which are not supported by a

15  statement of specific facts do not warrant habeas relief.  James v. Borg, 24 F.3d 20, 26 (9th Cir.

16  1994).

17       Regarding pleading a constitutional violation, merely placing a "due process" label on an

18  alleged violation does not entitle Petitioner to federal relief.  Langford v. Day, 110 F.3d 1386, 1388-

19  89 (1996).  Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable

20  claim.  Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995)(holding that conclusory allegations made

21  with no reference to the record or any document do not merit habeas relief); Greyson v. Kellam, 937

22  F.2d 1409, 1412 (9th Cir.1991) (bald assertions of ineffective assistance of counsel did not entitle the

23  petitioner to an evidentiary hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999),

24  *citing* Gray v. Netherland, 518 U.S. 152, 162-63 (1996) ("general appeals to broad constitutional

25  principles, such as due process, equal protection, and the right to a fair trial, are insufficient to

26  establish exhaustion);  Borg, 24 F.3d at 29 ("Conclusory allegations which are not supported by a

27  statement of specific facts do not warrant habeas relief." ); Allard v. Nelson, 423 F.2d 1216, 1217

28  (9th Cir.1970) (conclusory allegations in a habeas petition fail to state a claim and do not suffice to

1  shift the burden to the state to answer an order to show cause.)  Hence, a petitioner in federal court

2  cannot merely characterize some state act as unconstitutional and expect this Court to explore all

3  possible grounds under each article and amendment of the Constitution. While courts should

4  liberally interpret pro se pleadings with leniency and understanding, this should not place on the

5  reviewing court the entire onus of creating a federal claim for the petitioner.

6        Proposition 9, approved by California voters in 2008, amended California Penal Code §

7  3041.5, inter alia, to defer subsequent parole consideration hearing for longer periods of time:

8        (b)(3) The board shall schedule the next hearing, after considering the views and interests of the victim, as follows:

9

10        (A) Fifteen years after any hearing at which parole is denied, unless the board finds by clear and convincing evidence that the criteria relevant to the setting of parole release dates enumerated in subdivision (a) of Section 3041 are such that consideration of the public and

11        victim's safety does not require a more lengthy period of incarceration for the prisoner than 10 additional years.

12

13  Cal. Pen. Code § 3041.5(b)(3)(A).[2]

14        California Penal Code § 3041 provides as follows:

15        (a) In the case of any inmate sentenced pursuant to any provision of law, other than Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, the Board of Parole

16        Hearings shall meet with each inmate during the third year of incarceration for the purposes of reviewing the inmate's file, making recommendations, and documenting

17        activities and conduct pertinent to granting or withholding postconviction credit. One year prior to the inmate's minimum eligible parole release date a panel of two or more

18        commissioners or deputy commissioners shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.4. No more than one

19        member of the panel shall be a deputy commissioner. In the event of a tie vote, the matter shall be referred for an en banc review of the record that was before the panel that

20        rendered the tie vote. Upon en banc review, the board shall vote to either grant or deny parole and render a statement of decision. The en banc review shall be conducted

21        pursuant to subdivision (e). The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude with respect to their threat to

22        the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The

23        board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the inmate was sentenced and

24        other factors in mitigation or aggravation of the crime. At least one commissioner of the panel shall have been present at the last preceding meeting, unless it is not feasible to do

25        so or where the last preceding meeting was the initial meeting. Any person on the hearing panel may request review of any decision regarding parole for an en banc hearing by the

26        board. In case of a review, a majority vote in favor of parole by the board members participating in an en banc review is required to grant parole to any inmate.

27

28

      [2]There is no mention in Pen. Code § 3041.5 of good-time or work-time credits.

8

(b) The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting. After the effective date of this subdivision, any decision of the parole panel finding an inmate suitable for parole shall become final within 120 days of the date of the hearing. During that period, the board may review the panel's decision. The panel's decision shall become final pursuant to this subdivision unless the board finds that the panel made an error of law, or that the panel's decision was based on an error of fact, or that new information should be presented to the board, any of which when corrected or considered by the board has a substantial likelihood of resulting in a substantially different decision upon a rehearing. In making this determination, the board shall consult with the commissioners who conducted the parole consideration hearing. No decision of the parole panel shall be disapproved and referred for rehearing except by a majority vote of the board, sitting en banc, following a public meeting.

(c) For the purpose of reviewing the suitability for parole of those inmates eligible for parole under prior law at a date earlier than that calculated under Section 1170.2, the board shall appoint panels of at least two persons to meet annually with each inmate until the time the person is released pursuant to proceedings or reaches the expiration of his or her term as calculated under Section 1170.2.

(d) It is the intent of the Legislature that, during times when there is no backlog of inmates awaiting parole hearings, life parole consideration hearings, or life rescission hearings, hearings will be conducted by a panel of three or more members, the majority of whom shall be commissioners. The board shall report monthly on the number of cases where an inmate has not received a completed initial or subsequent parole consideration hearing within 30 days of the hearing date required by subdivision (a) of Section 3041.5 or paragraph (2) of subdivision (b) of Section 3041.5, unless the inmate has waived the right to those timeframes. That report shall be considered the backlog of cases for purposes of this section, and shall include information on the progress toward eliminating the backlog, and on the number of inmates who have waived their right to the above timeframes. The report shall be made public at a regularly scheduled meeting of the board and a written report shall be made available to the public and transmitted to the Legislature quarterly.

(e) For purposes of this section, an en banc review by the board means a review conducted by a majority of commissioners holding office on the date the matter is heard by the board. An en banc review shall be conducted in compliance with the following:

(1) The commissioners conducting the review shall consider the entire record of the hearing that resulted in the tie vote.

(2) The review shall be limited to the record of the hearing. The record shall consist of the transcript or audiotape of the hearing, written or electronically recorded statements actually considered by the panel that produced the tie vote, and any other material actually considered by the panel. New evidence or comments shall not be considered in the en banc proceeding.

(3) The board shall separately state reasons for its decision to grant or deny parole.

(4) A commissioner who was involved in the tie vote shall be recused from consideration of the matter in the en banc review.

1    As can readily be seen from the full text of § 3041, no subdivision 3041(a)(2)(3) exists.

2    Accordingly, the Court cannot address Petitioner's claim that this non-existent statutory subdivision

3    violates federal constitutional principles.[3]  Moreover, it does not appear that Petitioner is claiming

4    that an increase in duration between parole hearings violates the ex post facto provisions of the U.S.

5    Constitution.  See Gilman v. Davis, 690 F. Supp. 2d 1105 (E.D. Cal. 2010)(granting injunctive relief

6    to inmates claiming Proposition 9 violates the federal ex post facto prohibition).  Rather, Petitioner

7    appears to be arguing that he is being exposed to a significant risk of prolonged incarceration by

8    virtue of losing good-time and/or work-time credits in violation of the ex post facto clause.  (Doc. 1,

9    p. 6; Doc. 11, pp. 2-3).

10    The U.S. Constitution prohibits states from passing any "ex post facto law." U.S. Const.,

11    Art. 1, § 10.  A law is an ex post facto law if it meets two conditions.  First, "it must apply to events

12    occurring before its enactment."  Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960 (1981).  "In

13    other words, it must be retrospective."  Hunter v. Ayers, 336 F.3d 1007, 1011 (9th Cir. 2003).  It must

14    also disadvantage the person affected by either altering the definition of criminal conduct or

15    increasing the punishment for the crime.  Id.  The ex post facto prohibition applies in the context of

16    prison time credits.  Weaver, 450 U.S. at 29 (ex post facto prohibition applied to state statute

17    reducing the amount of good time credits which could be earned by prisoners); Hunter, 336 F.3d at

18    1011 (ex post facto prohibition applied to regulations that eliminated restoration of forfeited good

19    time credits for serious infractions).  In the context of prison time credits, "the core question for ex

20    post facto purposes is whether the changed law imposes 'punishment more severe than the

21    punishment assigned by law when the act to be punished occurred.'"  Hunter, 336 F.3d at 1011

22    (quoting Weaver, 450 U.S. at 30).

23    Here, as Respondent correctly notes, Petitioner has failed to articulate a specific deprivation

24    of credits, referencing instead only a "sufficient risk" of, or theoretical loss of, credits.  (Doc. 1, p. 6).

25    Petitioner has failed to allege his present credit status, he has failed to allege how Proposition 9 has

26    or would negatively impact his credit-earning status, and he has failed to explain how Proposition 9

27

28    [3]In his opposition to the motion to dismiss, Petitioner refers to Cal. Penal Code § 3041(a)(b).  (Doc. 11, p. 3).
However, that subdivision does not exist either.

10

1    has either aggravated the factors of his crime or prolonged his term of incarceration.  Instead,

2    Petitioner has made a series of vague, generalized conclusions regarding violations of due process,

3    ex post facto, and the Sixth Amendment.  He has, in short, failed to provide any specific factual or

4    legal allegations that would permit either Respondent or the Court to fully comprehend how or in

5    what manner the State of California's passage of Proposition 9 entitles Petitioner to federal habeas

6    relief.

7           Accordingly, the Court will recommend that Respondent's motion to dismiss for failure to

8    state a claim should be granted.  See Escobedo v. Hartley, 2010 WL 3382405, * 3 (E.D. Cal. Sept. 9,

9    2010).  However, in an abundance of caution, Petitioner will be granted leave to file an amended

10   petition within thirty days.  If Petitioner chooses to file an amended petition, he must accurately

11   identify the statute or regulation he claims has worked a deprivation of his good-time and work-time

12   credits, and he must explain how the statute or regulation he identifies has either aggravated his

13   crime or prolonged his sentence.  Failure to provide such specific factual and legal allegations in the

14   amended petition will result in a Recommendation that the amended petition be dismissed.

15                                          **RECOMMENDATION**

16          Accordingly, the Court HEREBY RECOMMENDS as follows:

17       1.  Respondent's motion to dismiss (Doc. 10), should be DENIED on the grounds that the

18           petition was untimely under 28 U.S.C. § 2244(d);

19       2.  Respondent's motion to dismiss should be GRANTED for failure to state a claim upon

20           which federal habeas relief can be granted;

21       3.  The petition for writ of habeas corpus should be DISMISSED for failure to stte a claim.

22           Petitioner should be granted leave to file an amended petition stating a cognizable claim

23           for federal habeas relief.

24          This Findings and Recommendation is submitted to the United States District Court Judge

25   assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of

26   the Local Rules of Practice for the United States District Court, Eastern District of California.

27   Within twenty (20) days after being served with a copy, any party may file written objections with

28   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

11

1   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

2   filed within ten (10) court days (plus three days if served by mail) after service of the objections.

3   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The

4   parties are advised that failure to file objections within the specified time may waive the right to

5   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6

7   IT IS SO ORDERED.

8   Dated:   **October 14, 2010**                                        **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28